AMERICAN PLAN CORPORATION d/b/a American Finance System

*v.*

GINA LORRIE MECREDY and JAMES MECREDY, III, b/n/f and Mother Sandry Mecredy Hawryla.

443 S.W.2d 453

(*Knoxville,* September Term, 1968.)

Opinion filed June 9, 1969.

Opinion on Petition to Rehear filed July 28, 1969.

RICHARD B. GOSSETT, Chattanooga, BISHOP, THOMAS, LEITNER, MANN & MILBURN, Chattanooga, of counsel, for appellant.

MAX D. LUCAS, JR., KIRKPATRICK & LUCAS, Memphis, and S. RICHARD HOLCOMB, Chattanooga, MEYER & HOLCOMB, Chattanooga, of counsel, for appellees.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

This is a Workmen's Compensation case wherein the company appeals from a compensation award to Mrs. Hawryla [the widow of the deceased employee] and their children for the death of James Mecredy, Jr., the employee of the company who was the father of these minor children. The primary argument made here is that there is no material evidence to support the finding, and that the evidence preponderates against the finding.

The Chancellor, after hearing the proof, concluded that the statements made by Mr. Roberts, the manager of the defendant company, and a witness by the name of Nelson, were sufficient to entitle the complainants to recover.

The answer took the position, and it was their contention, that even if they admitted all allegations they

did not think that the deceased was acting on behalf of the defendant or was in the scope or course of his employment so as to make him covered by the Workmen's Compensation laws of this State.

The factual situation is shown in this record by the testimony of the widow of James Mecredy, Jr., that on the date of this fatal accident she was the wife of James Mecredy, Jr., and that they had two children, giving their ages, depending upon him for support. It is likewise shown that James Mecredy, Jr., the deceased workman, had worked for the defendant for some seven months before his death and was the Assistant Manager of the defendant company's office in Harriman, Tennessee, before he was transferred for a short while to Knoxville and then to Chattanooga, a few days before his death, where this accident happened.

The wife said she accompanied her husband on business occasionally and was familiar with the nature of his work. His work required him to make loans in the office and make collections outside the office, and he was paid so much a mile for the use of his automobile.

On Saturday, August 26, 1967, prior to this fatal accident on September 4, 1967, he returned to Knoxville and on August 28, 1967, he went to Chattanooga. When he first went to Chattanooga he stayed at the Reed House. His wife visited him there three days before his death when she returned to their former home. At the time she left to return to their home on September 3, 1967, he gave as his reason for not taking her back to Harriman that the manager of their company desired him to do a little work in the afternoon of Labor Day, September 4, 1967.

The next time she saw her husband it was after he had been in an automobile wreck with the manager of the company, Joe Roberts, and Mr. Mecredy was so severely injured that he died as a result of this injury. This woman testified as to the hospital bills and things of that kind. She also said that she found $466.00 in her husband's effects at the hospital and was told by the manager, Roberts, that this money belonged to the company and that her husband had had it with him to reaffirm a bankrupt debtor by the name of Nelson. This manager, Roberts, testified as follows:

"Q  * * * Do you know whether or not you told her on that occasion that you had been out familiarizing him with the city?

"A  I did.

"Q  You did tell her that, that's what you told Mrs. Mecredy?

"A  I did.

"Q  At the hospital. Of course, it is necessary that the collection manager be familiar with the city?

"A  Yes, it would be.

"Q  Excuse me.

"A  It would be.

"Q  Now, just so that since you don't have these records here, let me just ask you once again, this man was down here on an expense account?

"A  Yes sir." [Tr. p. 81, Vol. II]

Mr. Nelson likewise testified herein that at this time he had bankrupted an account that he had with the de-

fendant company and that Mecredy, the deceased husband and father, had come to his home several times shortly before Labor Day and had been there twice on Sunday, September 3, and about noon on Labor Day, September 4, trying to get him to sign up to pay his old debt and lend him another $500.00. He said he had to leave for work but made an appointment to meet Mecredy later that night about the loan, and that Mecredy told him he had to go that afternoon to see a client, etc. It is on this testimony and this alone that the Chancellor found that at the time of this accident this man was acting for the defendant, and his accident arose out of his employment.

■ When the accident happened Mecredy and the manager of the company were riding on the express-way and at the time of the accident they were headed in the wrong direction and had a head-on collision, as a result of which Mecredy died. The testimony of the manager of the company is that at the time they were riding around and had this wreck he, the manager of the company, was taking Mecredy over the territory on business for the company showing Mecredy around the different places he had to go in his business in working for the company in making collections, etc. The court could clearly reach an inference from what the witness, Nelson, testified that Mecredy had been out to his house on business of the company on this day, the day he was killed in the wreck. Under such a situation [the manager's statement and Nelson's] there is sufficient material evidence that this man was acting for the company and was doing so within the course and scope of his employment at the time he received this fatal injury.

The trial judge, seeing and hearing these witnesses, believed this. This is certainly material evidence. The question of the credibility of the witness in a compensation case is for the trial judge or the trier of facts. Credibility really means that the witness had told a story which meets the test of plausibility and is therefore credible. This witness does meet this test and is clearly credible.

In sec. 50-1018, T.C.A., the Legislature in enacting the compensation law in 1919, fifty years ago, provided therein that Workmen's Compensation cases are tried without a jury before a trial judge and he must make a finding, and if his finding is supported by any material evidence the appellate court must affirm. We commented especially on this fact in *Atlas Powder Co. v. Leister,* 197 Tenn. 491, 274 S.W.2d 364, and therein quoted a paragraph from *Sears-Roebuck & Company v. Finney,* 169 Tenn. 547, 89 S.W.2d 749, which is particularly applicable in this lawsuit and the way it is argued and presented to this Court.

A casual review of the notes following various Code Sections between sec. 50-901 et seq., T.C.A., and the concluding section therein will reveal many many notes annotating the cases on various questions considered under that particular section. Under sec. 50-902, T.C.A., and particularly note 80 of the Code, there will be found many cases digested on the question of traveling injuries.

The question of the findings of the trial judge and the effect on appeal have come up in practically everyone of the hundreds of cases that this Court has reviewed in the last fifty years. Several hundred of these cases will be found digested under note 40 at page 493 of the Code

under sec. 50-1018, T.C.A. There being no other material question herein the case must be affirmed.

There are some questions raised as to the admissibility of certain evidence and the belief to be put in certain witnesses, impeachment and things of that kind. But all of this has nothing in the world to do with this lawsuit, so long as these things did not affect the decision herein. Clearly, they did not, because under the proof of the manager of the company that he had taken this man around that afternoon showing him his territory, and of the inferences that may be drawn from the testimony of Nelson, this is sufficient for an award of compensation regardless of anything else. The Legislature in 1919 by the enactment of what is now sec. 50-1018, T.C.A., provided that the trial judge would be the finder of fact and, if there was any material evidence to support him, he would be affirmed. This was done to try to advance these cases on the docket and hear them first, and to eliminate the necessity of having the appellate court read these large records and try to sift out the facts. The only thing that the Legislature meant was to find in the record some material evidence to support the finding of the trial judge, and, if there was material evidence, then the appellate court must affirm. It was to try to speed up the trial on appeal in these cases.

From what has heretofore been said it is unquestionably our duty to affirm the holding of the Chancellor herein.

### On Petition To Rehear

Counsel for the employer has filed herein a courteous and dignified petition to rehear. This petition though presents absolutely nothing in addition to what was

presented on the original hearing. It is the purest attempt to reargue the position that the employer took in the outset, which was decided against the employer both by the Chancellor and by this Court. Consequently, it really does not deserve an answer other than to point out to counsel for the company wherein they are mistaken and wherein we and the position we have taken in such cases are correct.

We are courteously taken to task for making this statement: "The testimony of the manager of the company is that at the time they were riding around and had this wreck he, the manager of the company, was taking Mecredy over the territory on business for the company showing Mecredy around the different places he had to go in his business in working for the company in making collections, etc."

Of course, this is the conclusion that we reached after reading this record. The record clearly supports this conclusion. At page 36 of Volume 2 of the record the widow, was asked about talking to Mr. Roberts, the manager of the defendant corporation, and among other things she said: "He told me that he was trying to familiarize him with the city in order for him to be able to make him contacts and collections." On page 81 of Volume 2 of the record among other things Mr. Roberts testified, as follows:

"Q You could have told her that, all right. Do you know whether or not you told her on that occasion that you had been out familiarizing him with the city?

"A I did.

"Q You did tell her that, that's what you told Mrs. Mecredy?

"A I did."

Now let us look at what the Chancellor said [the trier of facts who saw and heard all these witnesses]. He said this in his Memorandum Opinion on page 18 of Volume 1 of the record:

"From the testimony of defendant's manager, his statements to the widow and the testimony of S. N. Nelson, the Court is satisfied that at the time of the accident, resulting in death, decedent was performing services to better qualify himself for that part of his job which required calling on delinquents in various parts of the city."

Obviously, regardless of the argument and belief of the defendant corporation, this is sufficient and ample evidence for the trial court, the one who sees and hears the witnesses, to find that the man at the time he was killed was on the business of the company. This being true, we cannot do anything about it. It can, of course, be argued pro and con, and it can be argued that the weight of the proof was to the contrary and that this manager stated absolutely the opposite in different parts of his testimony, but clearly under all decisions in this State in compensation matters it is up to the trier of facts to reach the conclusion as to what is the truth of the situation. When such is done, there is nothing that this Court can do about it.

Counsel cites *Jellico Grocery Co. v. Hendrickson,* 172 Tenn. 148, 110 S.W.2d 333, to the effect that isolated portions of testimony must be taken together and understood with what the witness said before he made these certain statements. In other words, this is nothing but an argument that the Chancellor should have believed this manager when he said they were not on the business

of the company, yet the Chancellor concluded under all these facts here and seeing and hearing these witnesses that this manager of the corporation was telling the truth when he said that Mecredy was on company business when this accident happened.

Therefore, for reasons stated in our original opinion the petition to rehear must be overruled.